IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARISOL MALDONADO,
INDIVIDUALLY AND AS
ADMINISTRATIX OF THE ESTATE OF
JONATHAN DELGADO, DECEASED
     v.
WAL-MART STORE #2141,
WAL-MART STORES EAST, INC.,
AQUA-LEISURE INDUSTRIES, INC. &
INTEX RECREATION CORP.

08-CV-3458

## ORDER

     AND NOW, on this _____ day of _____ 2010,

upon consideration of the Motion in Limine to Preclude the Testimony of Alison

Osinski and any response thereto, it is hereby ORDERED and DECREED that

Defendant's Motion in Limine is GRANTED.  Alison Osinski is hereby precluded

from testifying in this matter.


     By the Court:


_____

Restrepo, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARISOL MALDONADO,
INDIVIDUALLY AND AS
ADMINISTRATIX OF THE ESTATE OF
JONATHAN DELGADO, DECEASED
       v.                                                            08-CV-3458
WAL-MART STORE #2141,
WAL-MART STORES EAST, INC.,
AQUA-LEISURE INDUSTRIES, INC. &
INTEX RECREATION CORP.

**ALTERNATIVE ORDER**

AND NOW, on this _____ day of _____ 2010,

upon consideration of the Motion in Limine to Preclude the Testimony of Alison

Osinski and any response thereto, it is hereby ORDERED and DECREED that

Defendant's Motion in Limine is GRANTED and Alison Osinski is hereby precluded

from testifying as to those particular items outlined in the Memorandum of Defendant

in this matter.

By the Court:

_____

Restrepo, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARISOL MALDONADO, INDIVIDUALLY AND AS ADMINISTRATIX OF THE ESTATE OF JONATHAN DELGADO, DECEASED<br>v.<br>WAL-MART STORE #2141, WAL-MART STORES EAST, INC., AQUA-LEISURE INDUSTRIES, INC. & INTEX RECREATION CORP. | 08-CV-3458 |

**MOTION IN LIMINE OF DEFENDANTS WAL-MART STORES EAST, INC. AND WAL-MART STORE #2141 TO PRECLUDE THE TESTIMONY OF PLAINTIFF'S PROFFERED EXERT WITNESS, ALISON OSINSKI**

Defendants, Wal-mart Store #2141 and Wal-mart Stores East, Inc. (collectively "Moving Defendants" or Wal-mart), hereby submit this Motion in Limine to Preclude the Testimony of Proffered Expert Witness, Alison Osinski, and in support thereof, aver as follows:

1.   On the afternoon of July 28, 2006, 15-month-old Jonathan Delgado got out of his aunt's house without any adult's knowledge.

2.   Somehow, he entered the backyard where his 4-year-old, autistic brother was playing and where an unattended 48" deep pool was filled with water.

3.   Jonathan's mother, Marisol Maldonado, presumed to have left him in the care of her friend, Tanya, who was sitting in the kitchen talking on her phone.

4.   Ms. Maldonado claims that she went off to the powder room and after about 15 minutes, she heard a splash in the backyard.  Without receiving a

satisfactory response from Tanya, after some time, Ms. Maldonado went downstairs looking for Jonathan, ultimately finding him in the pool, nearly drowned.

5.      Plaintiffs commenced the above-captioned action on or about June 19, 2008 in the Court of Common Pleas of Philadelphia against Wal-mart and various manufacturers.[1]

6.      The matter was removed to the District Court for the Eastern District of Pennsylvania on July 24, 2008 and pursuant to this Honorable Court's Case Management Order, discovery is now concluded.

7.      Plaintiffs allege this incident occurred because of the defects present in the pool sold and/or distributed by Wal-mart.

8.      Plaintiff also contends that the defendant was negligent in the sale of this pool as it failed to provide enough safety education to the purchaser about the potential for drowning and alternative safety measures available to the public. A true and correct copy of the Plaintiff's Complaint is attached hereto as Exhibit "A" without admission thereto.

9.      In preparation for trial, and pursuant to her obligation under Federal Rule of Civil Procedure 26(a) (2), Plaintiff identified Alison Osinski ("Osinski") as an expert witness. *See* the report of Alison Osinski, a true and correct copy of which has been attached to Moving Defendants' Motion in Limine without admission as Exhibit "B".[2]

---

[1] It was ultimately determined that those manufacturers were not proper to the suit.
[2] It should be noted that the Osinski report is unnumbered. Thus, in the Exhibit, Defendant has numbered the pages for the Court's ease.

10.   Ms. Osinski's report, and hence purported testimony, does not meet the existing federal standard for expert witness testimony under Federal Rule of Evidence 702  or Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

11.   This expert never performed any analysis regarding this pool.

12.   All of the "opinions" are either a regurgitation of testimony or general, conclusory comments about inflatable pools in general.

13.   Osinski merely provides an opinion that Moving Defendants should have done more without any of the prerequisite analysis.

14.   Ms. Osinski, should therefore be precluded from testifying in this matter.

15.   In the alternative, specific portions of Ms. Osinski's proffered testimony should be precluded as it is irrelevant, inappropriate, and speculative.

WHEREFORE, for those reasons stated within the supporting Memorandum of law, Moving Defendants respectfully request that this Honorable Court preclude the testimony of Alison Osinski.  In the alternative, Moving Defendant respectfully submits that certain portions of the expert's proffered testimony be precluded.

Respectfully submitted,

Lisa Bellino Apelian, Esquire
Attorney for Defendant
Attorney I.D. No.:  55632
1818 Market St., Ste. 2510
Philadelphia, Pennsylvania  19103
(215) 430-6350
(215) 430-6351 (fax)

Dated: September 30, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARISOL MALDONADO,
INDIVIDUALLY AND AS
ADMINISTRATIX OF THE ESTATE OF
JONATHAN DELGADO, DECEASED
        v.
WAL-MART STORE #2141,
WAL-MART STORES EAST, INC.,
AQUA-LEISURE INDUSTRIES, INC. &
INTEX RECREATION CORP.

08-CV-3458

**BRIEF IN SUPPORT OF MOTION IN LIMINE OF DEFENDANTS WAL-MART
STORES EAST, INC. AND WAL-MART STORE #2141 TO PRECLUDE
THE TESTIMONY OF PLAINTIFF'S PROFFERED EXERT WITNESS, ALISON OSINSKI**

**I.**      **MATTER BEFORE THE COURT**

Defendants, Wal-mart Store #2141 and Wal-mart Stores East, Inc. (collectively "Moving

Defendants" or Wal-mart), have filed a Motion in Limine to Preclude the Testimony of Proffered

Expert Witness, Alison Osinski, and in support thereof, submit the following Brief:

**II.**      **FACTS AND PROCEDURAL HISTORY**

On the afternoon of July 28, 2006, 15-month-old Jonathan Delgado got out of his aunt's

house without any adult's knowledge.  Somehow, he entered the backyard where his 4-year-old,

autistic brother was playing and where an unattended 48" deep pool was filled with water.

Jonathan's mother, Marisol Maldonado, presumed to have left him in the care of her friend, Tanya,

who was sitting in the kitchen talking on her phone.  Ms. Maldonado claims that she went off to the

powder room and after about 15 minutes, she heard a splash in the backyard.  Without receiving a

satisfactory response from Tanya, after some time, Ms. Maldonado went downstairs looking for

Jonathan, ultimately finding him in the pool, nearly drowned.

Plaintiffs commenced the above-captioned action on or about June 19, 2008 in the Court of

Common Pleas of Philadelphia against Wal-mart and various manufacturers.[1]  The matter was

removed to the District Court for the Eastern District of Pennsylvania on July 24, 2008 and pursuant

to this Honorable Court's Case Management Order, discovery is now concluded.

Plaintiffs allege this incident occurred because of the defects present in the pool sold and/or

distributed by Wal-mart.  Plaintiff also contends that the defendant was negligent in the sale of this

pool as it failed to provide enough safety education to the purchaser about the potential for

drowning and alternative safety measures available to the public.  A true and correct copy of the

Plaintiff's Complaint is attached hereto as Exhibit "A" without admission thereto.

Moving Defendants filed an answer to the Complaint, denying each of the substantive

allegations set forth.  Accordingly, in preparation for trial, and pursuant to their obligation under

Federal Rule of Civil Procedure 26(a) (2), Plaintiffs identified Alison Osinski ("Osinski") as an

expert witness.  *See* the report of Alison Osinski, a true and correct copy of which has been attached

to Moving Defendants' Motion in Limine without admission as Exhibit "B".  (It should be noted that

the Osinski report is unnumbered.  Thus, in the Exhibit, Defendant has numbered the pages for the

Court's ease.)

In her ten (10) page report, Osinski gives many "opinions" and ultimately notes that the

"inflated ring pool was defectively designed and not safe for its intended use."  See Exhibit "B",

page 10 without admission.  She further notes that the warnings were in adequate and that

> ...higher quality components should have been manufactured and sold.  Sales,
> assembly and installation of the product should have been done by pool
> professionals.  Effective barriers and multiple layers of protection could have
> prevented this tragedy when a momentary failure of adult supervision
> occurred.  Customers need to be educated in the safe use of the product and
> warned of the dangers of improper use, and this education was not provided
> by the manufacturer or retail sales personnel.  Customers need to understand
> that the product is not a "toy", but rather a consumer product that when

---

[1] It was ultimately determined that those manufacturers were not proper to the suit.

improperly designed or used, can result in catastrophic injury or death, especially to young children. *Id.*

This expert never performed any analysis regarding this pool. All of the "opinions" are either a regurgitation of testimony or general, conclusory comments about inflatable pools in general. Additionally, many irrelevant and inappropriate "opinions" are listed, which should be precluded altogether. Osinski merely provides an opinion that Moving Defendants should have done more without any of the prerequisite analysis.

To suggest that Ms. Osinski used any provable or scientifically reliable method as a basis of her conclusions is unfounded. Simply put, she does not meet the existing federal standard for expert witness testimony under Federal Rule of Evidence 702 or <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), the seminal case regarding the obligatory standards with regard to the offering of expert testimony.

## III.   <u>QUESTIONS PRESENTED</u>

**A.   SHOULD THE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT, ALISON OSINSKI, BE PRECLUDED AT TRIAL WHEN IT DOES NOT SATISFY FEDERAL RULE OF CIVIL PROCEDURE 702 OR THE <u>DAUBERT</u> STANDARD FOR RELIABILITY AND OFFERS LITTLE MORE THAN CONCLUSORY STATEMENTS AND ASSERTIONS?**

**Suggested Answer: Yes.**

**B.   IN THE ALTERNATIVE, SHOULD PORTIONS OF PLAINTIFF'S PROFFERED EXPERT'S TESTIMONY BE PRECLUDED AS CONTRARY TO THE FACTS OF RECORD, INAPPROPRIATE OR IRRELEVANT?**

**Suggested Answer: Yes.**

## IV.    ARGUMENT

### A.    Legal Standard - Rule 702, Daubert and its Progeny

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S.

579, (1993) set forth the requirements for admissibility of expert witness testimony in federal trials.

Rule 702 states:

> **Testimony by Experts**
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
>
> F.R.E. 702.

Our United States Supreme Court has held that expert testimony not only is unnecessary, but

indeed may properly be excluded in the discretion of the trial judge "if all the primary facts can be

accurately and intelligible described to the jury, and if they, as men of common understanding, are

as capable of comprehending the primary facts and of drawing correct conclusion from them as are

witnesses possessed of special or peculiar training, experience, or observation in respect of the

subject under investigation..." Salem v. United States Lines Co., 370 U.S. 31, 35 (1962) (citations

omitted).

"Faced with a proffer of expert scientific testimony under Rule 702, the trial judge... must

make a preliminary assessment of whether the testimony's underlying reasoning or methodology is

scientifically valid and properly can be applied to the facts at issue." Daubert, 509 U.S. at 592.

The Court further held that "many considerations will bear on the inquiry, including whether

the theory or technique in question can be (and has been) tested, whether it has been subjected to

peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community. The inquiry is a flexible one, and its focus must be solely on principles and methodology, not on the conclusions that they generate." Id.

Rule 702 embodies "three distinct substantive restrictions on the admission of expert testimony: qualification, reliability, and fit." U.S. v. Mathis, 264 F.3d 321, 335 (3d Cir. 2001)[citations omitted]. Rule 702 requires the witness to have "specialized knowledge" regarding the witness' area of testimony. "The basis of this specialized knowledge can be practical experience as well as academic training and credentials. The specialized knowledge requirement is construed as stating a policy of liberal admissibility of expert testimony which extends to the substantive as well as the formal qualification of experts. However, at a minimum, a proffered expert witness *must* possess skill or knowledge greater than the average layman." Elcock v. Kmart Corp., 233 F.3d 734 (3d.Cir.2001).

An expert's opinion is reliable if it is " 'based on the 'methods and procedures of science' rather than on *'subjective belief or unsupported speculation'*; the expert must have 'good grounds' for his or her belief." See Id. at 745 [emphasis added, citations omitted]. Although many factors must be considered by a court when determining if proffered expert testimony is sufficiently relevant and reliable, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000)[quoting Daubert, at 593].

The Third Circuit then incorporated the multi-factorial test set forth in Daubert, finding that the following elements must be considered when weighing an issue of an expert's admissibility:

     (1)  [W]hether a method consists of a testable hypothesis;
     (2)  [W]hether the method has been subject to peer review;
     (3)  [T]he known or potential rate of error;

    (4)   [T]he existence and maintenance of standards controlling the technique's operation;

    (5)   [W]hether the method is generally accepted;

    (6)   [T]he relationship of the technique to the methods which have been established to be reliable;

    (7)   [T]he qualifications of the expert witness testifying based on the methodology; and

    (8)   [T] he non-judicial uses to which the method has been put.

*See* Elcock. at 745-746.

Further, expert testimony *must assist the trier of fact to understand the evidence or to determine a fact in issue. See* Daubert at 587-88. The proponent of the expert testimony bears the burden of proving by a preponderance of the evidence that the above standard is met. *See* Daubert, n.10.

The focus of a trial court's assessment is the reliability of the *methodology* by which the expert derived his or her conclusions, not the correctness of the conclusions themselves. Pineda v. Ford Motor Co., 520 F.3d 237 (3d Cir. March 24, 2008)[emphasis added, quoting Kannankeril v. Terminix Int'l Inc., 128 F.3d 802, 807 (3d Cir. 1997)]("an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable").

Moreover, this standard is applicable not only to scientific methodology, but is extended to all expert testimony. Kumho Tire Company, LTD., et al. v. Carmichael, et al., 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999).

**B.**      **The Testimony of Plaintiff's Proffered Expert, Alison Osinski, should be Precluded at Trial Because it Does Not Satisfy the Daubert Standard for Reliability**

The purpose of the Osinski[2] report is to "formulate opinions concerning the cause of Jonathan Delgado's drowning and how it could have been prevented." These issues, as presented, are not issues in this case and are misleading.  It is clear and uncontested that no one knows how

---

[2] It should be noted at the onset that Alison Osinski qualifies herself as an "aquatics expert".  She does not suggest that she is a medical doctor, forensic pathologist, electrician or engineer.  Thus, any opinions that she might render in these areas is without the prerequisite expertise

Jonathan Delgado entered the pool on that date. Even Osinski notes this at the top of page 5. Yet, without any basis in fact or analysis, Osinski opines that: "The precipitating event which led to the drowning was most likely entrapment between the inflated ring and the vinyl pool material. Due to Jonathan's young age and inability to swim, he was not able to extricate himself from the situation." Osinski has no basis in fact nor does she provide any analysis as to how she comes to this conclusion. The closest ledge from which to leap is the twisting of the deposition testimony of Marisol Maldonado, discussing how she found Jonathan. Osinski notes that "Jonathan was in the pool, his head was turned sideways, and his body was trapped underwater and pinned under the inflated ring of the pool. See Exhibit "B", p. 4 without admission. Even assuming *arguendo* that this is correct, this information is not used in describing the alleged "defectiveness" of the pool. Rather, the expert notes in general, that the pool was defectively designed and not safe for its intended use. *Id.* p. 8. The warnings were ineffective and the sale of pools should be done by explaining more to the public about "multiple layers of protection" and safety. *Id.* p. 8. There is no methodology in this opinion and as such, it does not meet the <u>Daubert</u> standards.

Mr. Osinski's report generates more questions than it does answers. For example, what is standard for an above ground inflatable pool? What is a manufacturer's or seller's duty to the public? How, if the homeowner sets the pool up correctly, is there a lack of instruction as to the requirements of the local statutes or ordinances? How was Moving Defendants' pool sale insufficient, aside from the conclusory assertion that it should have told the public more? How would different warnings have cautioned a 15-month-old from entering the pool? Why were different warnings needed when the adults deposed all noted that they knew of the hazards of children drowning? What are these "multiple layers" of protection and how many or which one would have saved Jonathan Delgado? How is more than 15 minutes a "momentary failure" in adult supervision? How were Moving Defendants in violation of any existing industry standards or

procedures? And more importantly, how does one go about testing or evaluating the pool for compliance to any alleged standards?

As argued in both Moving Defendants' Motion for Summary Judgment and this motion, Plaintiffs have set forth no standard that Wal-mart has violated that is causative of this incident. The experts in this matter do not set forth any standard, nor do they provide the assistance to the trier of fact in understanding this standard or its application to the instant facts.

It is clear that the report merely bandies about inflammatory language and unsubstantiated accusations without so much as a *reference* to an analytical methodology. There simply is no recognizable basis for general competency or provability, and the necessity or usefulness of such testimony to a jury is nonexistent. The opinions are nothing more than rhetorical devices and broad assertions.

As stated above, an expert must have "good grounds" for his or her belief. The inquiry into methodology is designed to ensure that an expert's opinions are based upon "methods and procedures of science rather than on subjective belief or unsupported speculation." See Hered, LLC v. Seneca Ins. Co., [citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir.1994)]. Mr. Osinski's report is materially deficient in multiple regards when viewed in light of the considerative factors set forth in the relevant case law cited above and set forth in Elcock.

It is Osinski's theory is essentially that Moving Defendants simply should have done more. Despite being a conclusion for which expert pedigree is wholly unnecessary, *how* exactly is this theory of liability "tested"? It certainly is not reviewable under an accepted peer review process. Further, as there is no process, we are unable to determine if there is a high risk of potential error, which is violative of the third Elcock factor. Additionally, identifying the standards of control is impossible when there is no process of scientific or expert determination to evaluate. The same holds true for the remaining elements of the test, with the singular exception being the seventh (7th)

8

factor, which pertains to an expert's credentials.  However, assuming Ms. Osinski is duly

credentialed in the field of aquatics, reliance upon her experience alone is insufficient.  See Chester

Valley Coach Works v. Fisher Price, 2001 U.S. Dist. LEXIS 15902, at 10 (E.D.Pa. 2001).

In his opinion in Chester Valley, Judge Surrick provides instructional insight when

evaluating expert reports lacking in foundational science or methodology.  Specifically, the Court

was presented with a motion to preclude expert testimony relative to the cause and origin of the fire

upon which the subject litigation was based.  In the report received and reviewed by the Court, the

expert admittedly never visited the scene of the fire, nor did he conduct any test to determine/prove

his hypothesis.  The Court found that these were critical elements of the expert process:

> As has been explored at great length above, [plaintiff's expert], like the expert in
> Oddi, did not test his theories in any way and does not support his conclusions
> through generally accepted principles or methodologies. Rather, his testimony is
> simply "*ipse dixit* [and] does not withstand Daubert's scrutiny."

See Chester Valley at 38-40

In the case of Booth v. Black & Decker, 166 F. Supp. 2d 215 (Pa.E.D. 2001)[analogized by

Chester Valley], the Court granted summary judgment to the defendant on plaintiff's negligence,

design defect, and breach of warranty claims stemming from a house fire allegedly caused by a

Black & Decker toaster oven.  In granting summary judgment upon concluding that the plaintiff's

expert causation testimony must be excluded pursuant to Daubert, the Court noted:

> [The expert] asserted that his method of investigating the cause of the fire was a
> standard method applied by others in the field, but he produced no persuasive,
> objective evidence that his method was subject to peer review, had a known or
> potential rate of error, could be measured against existing standards, or was generally
> accepted, as required by Rule 702, Daubert, Kumho Tire Co., Ltd. v. Carmichael,
> 526 U.S. 137 (1999), and Oddi... [The expert] claimed, only at the prompting of
> defense counsel, that he followed the general methodology of fire investigation
> established by the National Fire Protection Association... NFPA 921...

> Furthermore, [the expert] *pointed to nothing in* [NFPA 921] *that provided a
> methodology for investigating the hypothesized cause of the fire in this case.*

See Id. at 220[emphasis added].

9

Here, as was the case in <u>Chester Valley</u> and <u>Booth</u>, there is no reliance upon any testing, experimentation or generally accepted texts or treatises to support Osinski's conclusions.  Moreover, <u>Booth</u> is particularly analogous to the immediate case, in that, Osinski notes that she reviewed various articles and texts as well as ANSI/NSPI – 4, -8, and NSPI Safety Guide (*Id.* p. 10), yet, she points to nothing in any of these materials that provides a methodology for investigating the functionality or adequacy of pool design or its sale.

It appears that Ms. Osinski never applied any of the existing procedures or protocols when arriving at her conclusions.  In actuality, there is nothing "expert" about her conclusions by any definition of the word or understanding of its meaning as set forth under the law.  It contains no more than conclusory statements and offers the jury no more than what can be derived from an individual's own understanding of the facts.  Accordingly, her opinions amount to nothing more than "*ipse dixit*", and as such do not assist the jury.  Testimony that offers only generalized common sense does not rise to the level of expert opinion solely because it was offered by someone with an academic pedigree.  <u>Fedor v. Freightliner Inc.</u>, 193 F. Supp. 2d 820, 832 (E.D. Pa.2002).

### C. In the alternative, portions of Ms. Osinski's report should be stricken and precluded

The expert makes various comments in the report which are not appropriately placed before the jury.  Herein, Wal-mart points out to those items so that they are precluded by way of motion.

The expert notes that factually,

- ➢ the actual drowning incident was witnessed only by Danny Delgado, Jonathan's brother who has been diagnosed with autism.
- ➢ Jonathan Delgado's condition at the time he was removed from the pool was consistent with the post-aspiration stage of drowning.
- ➢ The drowning was accidental.

10

> ➢ The precipitating event which led to the drowning was most likely entrapment between the inflated ring in the vinyl pool material. Due to Jonathan's young age and his inability to swim, he was not able to extricate himself from the situation.

> ➢ Certain causes can be ruled out (environmental conditions such as dangerous or real life, trauma, education, diabetic, and loss of consciousness, hypothermia, decompression sickness, air embolism, a laryngospasm and suffocation\tri-drowning, alcohol or drug intoxication, reaction to contaminated water, suicide, homicide or intentional/unintentional injury). And, there is no indication that cramps, shallow water blackout, head or spinal injury, sudden cardiac emergency, or seizure were possibilities.

> ➢ Jonathan was able to either climb up the sides of the pool, climb onto adjacent objects or structures and fell into the pool, or used the ladder to access the pool.

Ms. Osinski is not a medical doctor. She is not forensic pathologist. While it may be ultimately the none of these issues are relevant, they are nevertheless speculative and should not be submitted to the jury. There is no testimony from Danny Delgado, nor will there be any at the time of trial pursuant to stipulation by plaintiff's counsel that he is incompetent to testify. Thus, to suggest that he witnessed this incident is inappropriate as there has been no competent testimony to this effect. Additionally, the cause of Jonathan's drowning is also speculative, especially coming from this expert. Without the requisite background, to suggest to the jury why or how Jonathan drowned, is not appropriate. To submit that Jonathan gained entry to the pool in one of the three methods noted above, excluding others, is contrary to the facts of record and does not address other possible, plausible alternatives.

Most importantly, to submit to the jury that Jonathan drowned because he was wedged between the inflatable ring of the pool and the wall of the pool is completely speculative and

11

inappropriate. There is no competent testimony which states this and to suggest that is the cause of Jonathan's drowning is improper. There is no foundation factually or expertly for this conclusion. It should be precluded altogether. Moreover, the expert's own words of "most likely" did not give it a prerequisite standard for reliability or expert opinion. It clearly is speculative.

This expert then makes conclusory comments about the pool and its sale which are inappropriate in this setting. For example, that Mr. Yeager may have flooded his neighbors basement the previous summer because he didn't follow the instructions on how to disassemble the pool or even that the pool lacked such instructions is irrelevant. The fact that instruction video or DVD was not supplied is also irrelevant. Suggesting to the jury that "pool professionals" somehow differently sell their product is also irrelevant. There is no suggestion that "pool professionals" sell these inflatable pools. Comments about the National Electric Code are also irrelevant as there is no indication that electricity played any part in this incident. The statistics regarding young children drowning in pools is improper to place before the jury, especially without certain underlying pieces of evidence in the analysis. For example, the expert has not mentioned whether those pools in their structure, size, or position are in any way similar to that involved in this incident. The ages of the children are not listed. Are pool submersion injuries that the expert cites broken bones or a drowning and how are they sustained?

Most egregious is the comment, "the most likely victim of fatal drowning is a two-year-old boy, last seen inside the house, and thought to be safely engaged in some activity by the adults on the premises." Such a comment is placed before a jury simply to inflame and evoke sympathy.

Notes about pool drainage and chemicals used therein are clearly irrelevant and should not be presented to the jury. The expert's comments about the ladder included with the pool package and its potential instability or design is also a red herring, especially without testimony placing it in the pool at the time of the incident. The comment about not being strong enough to hold larger

12

adults is of no moment in this case since Jonathan was nowhere near adult and since there is no fact

of record that he used the ladder.  While "a small child may fall into the pool while trying to

transition from one side of the ladder to the other" there is no evidence in this case that this

happened to Jonathan Delgado.  Notes about the ladder instability should never reach a jury as it

would inappropriately suggest to the jury that somehow the ladder and its alleged instability

somehow allowed Jonathan to fall into the pool.

All of these comments should be precluded altogether and should this Honorable Court

permit Ms. Osinski to otherwise testify, this specific testimony should not be permitted.

## V.    CONCLUSION

There is not a basic presentation of a reliable methodology that was used by Ms. Osinski in

expressing her opinion about the pool or its sale.  The report is simply a statement of naked

assertions and judgmental conclusions as to the issues the fact finder must decide in this case.  It

does not make a showing of a methodology that can lead to a reliable determination of the safety, or

of the degree of safeness, required of the pool, or how it was inadequate or defective.

No data was provided, let alone referenced in her conclusions.  No ad hoc rules are cited, no

customs or practices affecting the subject pool  are discussed.  There is absolutely no indication that

testimony is reliable or even *necessary*.

Therefore, in accordance with the law cited herein, Moving Defendants pray that the

testimony of Plaintiff's expert, Alison Osinski, be precluded for want of reliability and/or necessity.

Respectfully submitted,

Lisa Bellino Apelian, Esquire
Attorney for Defendant
Attorney I.D. No.:  55632
1818 Market St., Ste. 2510
Philadelphia, Pennsylvania  19103
(215) 430-6350(phone)(215) 430-6351 (fax)

Dated: September 30, 2010

## VERIFICATION

LISA BELLINO APELIAN, ESQUIRE, hereby states that she is the attorney of record for Defendant, in this action and verifies that statements made in the foregoing **Motion** are true and correct to the best of her knowledge, information and belief.  The undersigned understands that the statements therein are made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

Very truly yours,
**KENNEDY, CAMPBELL, LIPSKI & DOCHNEY**

LISA BELLINO APELIAN
Attorney for Defendant
Wal-Mart Store #2141 and Wal-Mart Stores East, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARISOL MALDONADO,
INDIVIDUALLY AND AS
ADMINISTRATIX OF THE ESTATE OF
JONATHAN DELGADO, DECEASED
           v.
WAL-MART STORE #2141,
WAL-MART STORES EAST, INC.,
AQUA-LEISURE INDUSTRIES, INC. &
INTEX RECREATION CORP.

08-CV-3458

## CERTIFICATE OF SERVICE

I, Lisa Bellino Apelian, Esquire, hereby certify that a true and correct copy of the foregoing document was sent via first class mail, on October 1, 2010, to the following individuals:

**The Honorable L. Felipe Restrepo**
USDC – Eastern District of Pa
Suite 3038
601 Market Street
Philadelphia, PA

**Michael T. Rooney, Esquire**
Rooney & Rooney
Two Penn Center Plaza
1500 JFK Blvd.
Philadelphia, PA 19102

**KENNEDY, CAMPBELL, LIPSKI & DOCHNEY**

LISA BELLINO APELIAN
Attorney for Defendant
**Wal-Mart Store #2141 and Wal-Mart Stores East, Inc.**

# EXHIBIT "A"

ROONEY & ROONEY
Michael T. Rooney, Esq.
Celia Ann Rooney, Esq.              **ATTEST**
Attorney ID Nos.: 82239/84057
Two Penn Center Plaza              JUN 19 2008
1500 JFK Blvd., Suite 200
Philadelphia, PA 19102            **S. MASCUILLI**

This is not an arbitration matter.
An assessment of damages hearing
is not required.

ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| MARISOL MALDONADO, individually  :<br>And as Adminitratrix of the  :<br>Estate of Jonathan  :<br>Delgado, deceased  :<br>334 E. Eleanor Street  :<br>Philadelphia, PA 19120  :<br>                    Plaintiff,  :<br>-VS-  :<br>WAL-MART STORE # 2141  :<br>1601 S. Columbus Blvd.  :<br>Philadelphia, PA 19147  :<br>-AND-  :<br>WAL-MART STORES EAST, INC. and  :<br>Wal-Mart Stores East LP d/b/a  :<br>Wal-Mart Store #2141  :<br>1730 Lincoln Way East  :<br>Chambersburg, PA 17201  :<br>-AND-  :<br>AQUA-LEISURE INDUSTRIES, INC.  :<br>P.O. Box 239  :<br>Avon, MA 02322  :<br>-AND-  :<br>INTEX RECREATION CORP.  :<br>4001 Via Oro Avenue, Suite 210  :<br>Long Beach, CA 90801-1440  :<br>                    Defendants.  : | COURT OF COMMON PLEAS<br><br>PHILADELPHIA COUNTY<br><br>**JUNE 2008**<br><br>COURT TERM:   JUNE 2008<br><br>DOCKET NO. ____ 003353<br><br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED. |

**COMPLAINT – CIVIL ACTION**
**2P – PRODUCT LIABILITY**
**NOTICE**

**"NOTICE"**

*You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested

**"AVISO"**

"Le han demandado a usted en la corte. Si usted defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias, de plazo al partir de la fecha de la demanda y la notificacion. Hace falte asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisadi qye su usted no se defiende, la corte tomara medidas y puede continuar la demanda en

by the plaintiff. You may lose money or property or other rights important to you."

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION

LAWYER REFERRAL and INFORMATION SERVICE

One Reading Center
Philadelphia, PA 19107
(215) 238-1701

contra suya sin previo aviso o notification. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted."

"LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASSOCIACION DE LICENDIADOS DE FILADELFIA
SERVICIO DE REFENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, PA 19107
Telefono: (215) 238-1701

ROONEY & ROONEY
Michael T. Rooney, Esq.
Celia Ann Rooney, Esq.
Attorney ID Nos.: 82239/84057
Two Penn Center Plaza
1500 JFK Blvd., Suite 200
Philadelphia, PA 19102

This is not an arbitration matter.
An assessment of damages hearing
is not required.

ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| MARISOL MALDONADO, individually And as Adminitratrix of the Estate of Jonathan Delgado, deceased 334 E. Eleanor Street Philadelphia, PA 19120           Plaintiff, -VS- WAL-MART STORE # 2141 1601 S. Columbus Blvd. Philadelphia, PA 19147 -AND- WAL-MART STORES EAST, INC. and Wal-Mart Stores East LP d/b/a Wal-Mart Store #2141 1730 Lincoln Way East Chambersburg, PA 17201 -AND- AQUA-LEISURE INDUSTRIES, INC. P.O. Box 239 Avon, MA 02322 -AND- INTEX RECREATION CORP. 4001 Via Oro Avenue, Suite 210 Long Beach, CA 90801-1440           Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY COURT TERM:   JUNE 2008 DOCKET NO. _____ CIVIL ACTION JURY TRIAL DEMANDED. |

## CIVIL ACTION—COMPLAINT
## CODE 2P: STRICT PRODUCT LIABILITY AND NEGLIGENCE

Plaintiff, MARISOL MALDONADO, individually and as Administratrix of the

Estate of Jonathan Delgado, deceased, by and through her undersigned attorney, by way

of Complaint, states as follows:

1. Plaintiff, Marisol Maldonado is an adult individual residing at the address in the

caption and is the duly appointed Administratrix of the Estate of Jonathan Delgado, her

1

EZDM-PROD1 Case 2:08-cv-03493-JD Document 98 Filed 10/01/10 Page 25 of 48    Fax Server

Rx Date/Time    MAR-23-2009(MON) 16:54                    1                              P. 009
Wal-Mart '29 08 O (Mon, 23 Mar 2009 16:05:00 -0500)(8c4a56874b48484b0a3c4d3067f5147) Fax 17578570033    page 9 of 23

deceased minor child, and brings this action for wrongful death and survival causes of action on behalf of herself and other surviving family members.

2. Plaintiff received letters of administration on January 16, 2007, in the Register's Office, Philadelphia County, Pennsylvania, No. A0203-2007, and the other heirs, their relationship and addresses are as follows:

Hector Delgado, father, 334 E. Eleanor Street, Philadelphia, PA 19120

3. Defendant, Wal-Mart Store #2141 is a Pennsylvania corporation or other business entity and has a principal place of business at the address in the caption and is the retailer and dealer of a defective and dangerous swimming pool in which Jonathan Delgado drowned, and committed acts of negligence in selling and placing into the stream of commerce a defective and dangerous product without adequate warnings, signage, instructions and safety devices.

4. Defendants, Wal-Mart Stores East, Inc. and Wal-Mart Stores East, LP, doing business as Wal-Mart Store #2141 are Pennsylvania corporations, partnerships or other business entity and has/have a principal place of business at the address in the caption and is the retailer and dealer of a defective and dangerous swimming pool in which Jonathan Delgado drowned, and committed acts of negligence in selling and placing into the stream of commerce a defective and dangerous product without adequate warnings, signage, instructions and safety devices.

5. Defendant, Aqua-Leisure Industries, Inc. is a foreign for-profit corporation or other business entity licensed to do business in the Commonwealth of Pennsylvania or regularly doing business in the City and County of Philadelphia, Pennsylvania and has its principal place of business at the address in the caption and placed into the stream of

2

EZDM-PROD Case 2:08-cv-03459-LPP Document 38 Filed 10/01/10 Page 26 of 48

Rx Date/Time          MAR-23-2009(MON) 16:54                    )                              P. 010
Wal*Mart29 08 0 (Mon, 23 Mar 2009 16:05:00 -0500) (6e4e56674b48484fb0a3c4d306715147) Fax 17578570033          Page 10 of 23

commerce a dangerous and defective swimming pool which was distributed to Philadelphia, Pennsylvania where it was purchased at the Wal-Mart Store #2141 and in which Jonathan Delgado later drowned.

6. Defendant, Intex Recreation Corp., is a foreign for-profit corporation or other business entity licensed to do business in the Commonwealth of Pennsylvania or regularly doing business in the City and County of Philadelphia, Pennsylvania and has its principal place of business at the address in the caption and placed into the stream of commerce a dangerous and defective swimming pool which was distributed to Philadelphia, Pennsylvania where it was purchased at the Wal-Mart Store #2141 and in which Jonathan Delgado later drowned; the registered agent for service of process at the address in the caption is Gerald Margolis or any later registered agent.

7. The accident in which Jonathan Delgado sustained personal injuries occurred on or about July 28, 2006, at about 8:00 p.m. and subsequently he died on August 2, 2006, as a direct result of the personal injuries he sustained.

8. The accident in which Jonathan Delgado sustained personal injuries and subsequently died occurred in the backyard of the home of his aunt at 476 Robbins Street, Philadelphia, PA 19111.

9. The accident occurred as follows: Jonathan Delgado, age 18 months, climbed into the subject inflatable portable swimming pool and nearly drowned, sustaining serious personal injuries from which he died about six days later.

10. The defective product which caused injury and death in combination with the negligence of the Defendants and their actual or ostensible agents was: a portable

3

EZDM-PROD Case 2:08-cv-03458-LPP Document 38 Filed 10/01/10 Page 27 of 48

Rx Date/Time        MAR-23-2009(MON) 16:54                    1                      P. 011
waLᵗMart29  08  0(Mon, 23 Mar 2009 16:05:00 -0500) (6o4a56874b48484fb0a3c4d306715147) Fax 17578570033        Page 11 of 23

inflatable above ground swimming pool designed, manufactured, distributed and/or sold by the Defendants.

11.  The defective product was purchased in approximately June of 2005 at the Wal-Mart Store #2141 in Philadelphia, Pennsylvania.

12. The defective product and the negligent acts and omissions of the Defendants and their agents combined and commingled to cause the accident in which Jonathan Delgado suffered injuries and died.

13.  The product was defective at the time it left the custody and control of each of the Defendants.

14.  At all times relevant herein, the Defendants were engaged in the business of designing, manufacturing, testing, assembling, packaging, marketing, advertising, distributing, and selling consumer goods including portable inflatable pools such as the subject pool.

15. The Defendants are liable to the Plaintiff both for their direct negligence as business entities as well as vicariously for the negligent acts and omissions of their actual or ostensible agents, servants and employees, and the doctrine of *respondeat superior* is invoked herein.

16. As a result of the combined dangerously defective product and negligence of Defendants and their agents, Jonathan Delgado sustained the following injuries: complications of near drowning and eventual death six days later.

17. The identities of the agents, servants and employees of the Defendants for whom the Defendants are liable are well known to the defendant, but unknown to the plaintiff at this time; however, these individuals may be described by category as those individuals

4

who participated in the design, manufacture, marketing, testing, labeling, packaging, sale and distribution of the product and the warnings, labels, instructions, training, containers, manuals, and other written material which accompanied the product.

**COUNT I: STRICT PRODUCT LIABILITY
UNDER § 402A OF THE RESTATEMENT (SECOND) OF TORTS:
PLAINTIFF VS. ALL DEFENDANTS**

18.  Plaintiff restates and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

19.  The Defendants named above designed, manufactured, tested, marketed, distributed and/or sold the inflatable portable above ground swimming pool which was in a defective and unreasonably dangerous condition when it left the Defendants' custody and control, containing elements which made it unsafe and lacking elements which would have made it safe, as more particularly set forth below.

20. The elements contained or lacking in the inflatable portable above ground swimming pool which made it unreasonably dangerous to the user of the product consisted of the following:

a)      The design of the product contained unnecessarily dangerous characteristics which made it highly probable for a toddler to get into the pool unnoticed and drown.

b)      The design of the product was dangerously defective in that it allowed access and entry from the exterior wall surfaces whether inadvertently or not by young children who could not appreciate the risk and dangers.

c)      The design of the labels, instructions, and packaging had inadequate warnings concerning its hazards for young children;

5

EZDM-PROD Case 2:08-cv-03458-LPP Document 38 Filed 10/01/10 Page 29 of 48 Fax Server

Rx Date/Time     MAR-23-2009(MON) 16:54                    1                    P. 013
Wal-Mart29 08 0(Mon 23 Mar 2009 16:05:00 -0500)(6c4a56874b48484fb0a3c4d3067f5147) Fax 17578570033                    Page 13 of 23

d)     The design of the labels, instructions, and packaging had inadequate warnings concerning the type and use of safety measures needed to avoid serious injuries and death to young children.

e)     The design of the labels, instructions, packaging and warnings failed to meet the applicable federal and state Hazard Communication Standards under OSHA and ANSI as well as industry standards.

f)     The product as marketed, advertised and sold failed to incorporate adequate instructions and warnings concerning its proper and safe use to avoid serious injuries and death;

g)     The product failed to have adequate pre-market testing so that the design of the pool could be adjusted and made safer, and the packaging, labels, warnings, and instructions could be made more effective in communication the hazards of the product to purchasers.

h)     The pool was designed and sold without provision for a fence.

i)     The pool was designed and sold without provision for a door alarm.

j)     The pool was designed and sold without provision for supporting the side walls and top inflated ring with rigid supports.

k)     The marketing and advertising programs for the product mislead consumers into a belief that the product was safe when in fact Defendants knew it was not safe.

l)     The subject pool was improperly and inadequately tested.

6

EZDM-PROD1 CLA-CHO Case 2:08-cv-03456-LPP Document 38 Filed 10/01/10 Page 30 of 48 Fax Server

Rx Date/Time     MAR-23-2009(MON) 16:54                    1                    P. 014
Wal*Martɘ9 08 0(Mon, 23 Mar 2009 16:05:00 -0500) (6o4a56874b484B4fb0a3c4d3067f5147) Fax 17578570033     Page 14 of 23

19. The above defects directly and proximately caused, contributed to cause, and/or were substantial factors in causing the personal injuries, damages, and wrongful death complained of herein.

WHEREFORE, Plaintiff, MARISOL MALDONADO, prays judgment in her favor and against the Defendants, for compensatory damages for survival and wrongful death as set forth more fully below in a sum in excess of $50,000.00 and interest, costs, and such other and further relief as this Court may deem her entitled, under the statutes for survival and wrongful death as set forth below.

### COUNT II: NEGLIGENCE AND NEGLIGENT PRODUCT DESIGN: PLAINTIFF VS. ALL DEFENDANTS

20. Plaintiff restates and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

21. Defendants, experts in their field as designers, manufacturers, distributors and/or sellers of the subject product, had non-delegable duties to make a reasonably safe product for its intended purposes, and breached those duties, causing harm to Plaintiff herein.

22. The duties of the Defendants as designers, manufacturers, distributors and sellers of the subject product which Plaintiff alleges were breached consisted of the following:

a)       Defendants breached their duty to design, manufacture, distribute, and sell a reasonably safe product for its intended use.

b)       Defendants breached their duty to design, manufacture, distribute, and sell a reasonably safe product in that there were alternative safer designs which were

7

EZDM–PROD Case 2:08-cv-03458-LFF Document 38 PAGE 10/01/45 Page 31 of 48 Fax Server

Rx Date/Time     MAR-23-2009(MON) 16:54          1                              P. 015
Wal*Mart29 08 0(Mon, 23 Mar 2009 16:05:00 -0500)(6e4e56874b48484fb0a3e4d306715147) Fax 17578570033     Page_15 of 23

in use by other manufacturers of similar products at the time of the design,

manufacture, distribution and sale of the subject product.

c)      The Defendants breached their duty to incorporate adequate instructions,

labels, and warnings concerning its proper and safe use.

d)      The Defendants breached their duty to incorporate adequate safety

features and devices to make the product reasonably safe and to reduce the

significant risk of foreseeable serious personal injury and death.

e)      The Defendant failed to provide adequate instructions, labels and warnings

for and/or recall the product following its manufacture and sale after defendant

learned of its defective and unreasonably dangerous condition and the likelihood

that the product would cause serious and permanent injuries and death.

f)      The marketing and advertising of the product by the Defendants

deliberately mislead consumers into a belief that the product was safe when in

fact Defendants knew it was not safe.

g)      The marketing and advertising of the product by the Defendants contained

intentional misrepresentations that consumers did not need to use safety devices

or add braces to make the walls rigid or to take other safety measures for the

"easy-set" or "simple set" inflatable portable swimming pools in direct

contradiction to the safety recommendations of consumer information groups and

agencies.

h)      Defendant Wal-Mart was particularly and egregiously negligent in

instructing employees to misrepresent customers that they did not need any safety

device that was not in the box for the pool, including barriers, fences, alarms,

8

EZDM-PROD1 Case 2:08-cv-03458-LPP Document 38 Filed 10/01/10 Page 32 of 48

Rx Date/Time       MAR-23-2009(MON) 16:54                    1                    P. 016
na¨u¨Mar¨29 08 D[Mon, 23 Mar 2009 16:05:00 -0500] (6o4a56874b4B484b0o3c4d306715147) Fax 17578570033    page 16 of 23

rigid props for the soft sides of the pools, or any other safety measure or device, with full knowledge that customers would rely on their misrepresentations.

23. The above-described acts and omissions of the Defendants constituted negligence and negligent design of the product which caused, contributed to cause, and/or were substantial factors in causing the injuries and damages complained of herein.

WHEREFORE, Plaintiff, MARISOL MALDONADO, prays judgment in her favor and against the Defendants, for compensatory damages for survival and wrongful death as set forth below in a sum in excess of $50,000.00 and interest, costs, and such other and further relief as this Court may deem her entitled, under the statutes for survival and wrongful death as set forth below.

## COUNT III: WRONGFUL DEATH: PLAINTIFF VS. ALL DEFENDANTS

24. Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth herein.

25. Due to the negligent conduct, defective product, and failure to act on the part of Defendants and their agents, servants and employees as aforesaid, Plaintiff, individually and as personal representative on behalf of the beneficiaries of decedent's estate, is entitled to recover damages for decedent's wrongful death pursuant to 42 Pa.C.S.A. § 8301 and Pa.R.C.P. 2201 et seq.

26. Said beneficiaries, by reason of the wrongful death of the decedent, have suffered pecuniary loss, hospital, nursing, medical, funeral and other expenses of administration of the Estate.

27. The surviving family members have suffered the loss of Decedent's earnings, companionship, comfort, society, guidance and moral support.

9

EZDM–PROD1 Case 2:08-cv-03458-LPH Document 38 Filed 10/01/10 Page 33 of 48

Rx Date/Time       MAR-23-2009(MON) 16:54          1                              P. 017
wal*Martes  08  o(Mon, 23 Mar 2009 18:0S:00 -0500) (6o4a56874b484B4b0a3c4d306715147) Fax 17578570033       page_17 of 23

28. Plaintiff is entitled to recover, in addition to other damages, amounts for
reasonable hospital, nursing, medical and funeral expense, and expenses of
administration necessitated by reason of the wrongful death caused by the negligent
conduct and omissions to act of the Defendants and their agents, servants and employees.

WHEREFORE, Plaintiff, Marisol Maldonado, individually and as Administratrix
of the Estate of Jonathan Delgado, prays judgment in her favor as aforesaid on her causes
and against the Defendants, jointly and severally, for damages in an amount in excess of
fifty thousand dollars ($50,000.00), together with interest and costs and such other
damages as this Honorable Court may deem just, reasonable and proper.

### COUNT IV: SURVIVAL ACTION
### PLAINTIFF VS. ALL DEFENDANTS

29. Plaintiff restates and incorporates by reference all of the preceding
paragraphs as though fully set forth herein.

30. Plaintiff, Marisol Maldonado, in her representative capacity, brings this
action on behalf of the Estate of Jonathan Delgado, for all damages allowed pursuant to
and by virtue of the Act of June 30, 1972, P.L. 500, No. 164, §2, effective July 1, 1972,
20 Pa.C.S.A. § 3373 and 42 Pa.C.S.A. 8302.

31. Plaintiff claims on behalf of said Estate damages suffered by reason of the
personal injuries and death of decedent, directly and proximately caused by the defective
product and the negligent conduct of the Defendants, including but not limited to the loss
of earnings and earning capacity, and physical, mental and emotional pain, suffering, and
loss of enjoyment of life, of the decedent prior to his death.

32. The defective product designed, manufactured, distributed and sold by the
Defendants, in combination with the negligent acts and omissions of the Defendants and

10

EZDM-PROD1 Case 2:08-cv-03456-JFB Document 98 Filed 10/01/10 Page 34 of 48

Rx Date/Time        MAR-23-2009(MON) 16:54                    1                        P. 018
#al*Mar29  08  0 (Mon, 23 Mar 2009 16:05:00 -0500) (6o4a56874b4B4B4b0o3o4d306715147) Fax 17578570033        Page 18 of 23

their agents, servants, and employees, caused, contributed to cause, and/or increased the risk of harm of the personal injuries, severe pain and suffering and wrongful death of the decedent.

WHEREFORE, Plaintiff prays judgment in her favor and in favor of the Estate and against the Defendants, jointly and severally, for damages in an amount in excess of fifty thousand dollars ($50,000.00), together with interest and costs and such other damages as this Honorable Court may deem just, reasonable and proper.

### COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS PLAINTIFF MARISOL MALDONADO, INDIVIDUALLY VS. ALL DEFENDANTS

33. Plaintiff restates and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

34. Plaintiff, Marisol Maldonado, was the mother of the decedent, 18 month old Jonathan Delgado.

35. Prior to the events complained of in this Complaint, Plaintiff enjoyed a close and loving relationship with her young son.

36. Plaintiff was traumatized and suffered extreme emotional distress as a result of observing his condition in the pool, running to him and taking him out of the pool, and attempting to revive him with CPR measures, and later watching him as he suffered and died six days later in the hospital.

37. As a result of the above, Plaintiffs are entitled to damages for extreme emotional distress directly and proximately caused by the negligence of the Defendants and their agents, servants and employees.

11

EZDM–PROD Case 2:08-cv-03458-LPR Document 38 Filed 10/01/10 Page 35 of 48

Rx Date/Time        MAR-23-2009(MON) 16:54              1                          P. 019
WAL*MART29 08 0(Mon, 23 Mar 2009 16:05:00 -0500) (6o4o56874b48484fb0a3c4d30671S147) Fax 17578570033     Page 19 of 23

WHEREFORE, Plaintiff prays judgment in her favor individually and against the
Defendants, jointly and severally, for damages in an amount in excess of fifty thousand dollars
($50,000.00), together with interest and costs and such other damages as this Honorable Court
may deem just, reasonable and proper.

### COUNT IV: PUNITIVE DAMAGES:PLAINTIFF MARISOL MALDONADO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JONATHAN DELGADO, DECEASED, VS. ALL DEFENDANTS

38. Plaintiff restates and incorporates by reference all of the preceding paragraphs as
though fully set forth herein.

39. At all times relevant herein, Defendants knew, as experts in their field and as those
most knowledgeable concerning the hazards in their products including the portable inflatable
above ground swimming pool at issue herein, and should have known through adequate testing
and compilation of data concerning accidents involving the product, that serious and permanent
injuries and death to young children could and did occur prior to the events complained of by
Plaintiff herein, and yet, Defendants did little or nothing to improve the safety of their product,
train their agents and employees in safety, or to alert customers and users to the hazards of the
product and the means or methods they could use to protect themselves and their children
therefrom; moreover, the misconduct rose to a level of extreme outrage in that employees of
Defendants, particularly Wal-Mart, were trained to dissuade consumers from considering safer
products or purchasing safety devices or measures in order to make the quick sale of the "big
box" product without regard to the extreme dangers of serious injury and death.

40. Such conduct by the Defendants constituted malicious, willful or wanton conduct
and/or demonstrated such a reckless disregard for the lives and safety of the users of their

12

EZDM–PROD Case 2:08-cv-03458-LPP Document 38 Filed 10/01/10 Page 36 of 48

Rx Date/Time        MAR-23-2009(MON) 16:54                    I                    P. 020
Wal*Mar t29  08  0(Mon. 23 Mar 2009 16:05:00 -0500) (6c4a56874b48484fb0a3c4d3067f5147) Fax 17578570033      Page_20 of 23

product that an award of punitive damages to punish the Defendants and to deter others from similar conduct is warranted in this case.

WHEREFORE, Plaintiff prays judgment in her favor and against the Defendants for punitive damages, above and beyond her compensatory damages, in an amount in excess of $50,000.00, and such other and further relief as this Court may deem her entitled.

ROONEY & ROONEY

Dated: 6/18/08

Michael T. Rooney, Esq.
Attorney for Plaintiff

13

## VERIFICATION

I, Marisol Maldonado, hereby certify as follows:

    1. That I am the Plaintiff named herein;

    2. That I have reviewed the allegations stated in the foregoing Complaint;

    3. That the allegations are true and correct to the best of my knowledge,

information and belief.

I understand that if any of the foregoing statements are willfully false, I am subject to

punishment under the law pertaining to unsworn statements to authorities.

Dated: 6/18/08

                                      Marisol Maldonado
                                      Individually and as Administratrix
                                      Of the Estate of Jonathan Delgado
                                      Plaintiff

# EXHIBIT "B"



# Aquatic Consulting Services

**1220 Rosecrans Street #915 · San Diego · California · 92106**

June 30, 2010

Rooney & Rooney
Two Center Plaza
1500 JFK Blvd., Suite 200
Philadelphia, PA 19102
(215) 854-4085 (O), (215) 732-2440 (F)

RE: Maldonado v. Wal-Mart, et al.

Dear Mr. & Ms. Rooney:

I am an aquatics consultant, holding a Ph.D. in physical education with a specialty in aquatics. I hold certifications as a certified pool operator, as a pool operator instructor from the National Swimming Pool Foundation, Master Clinician of Aquatic Liability from the Aquatic Council of the American Alliance for Health, Physical Education, Recreation & Dance; and as a NSPI Certified Service Professional (Association of Pool and Spa Professionals, formerly known as the National Spa & Pool Institute). I am a user sector member of the NSF International – NSF/ANSI 50 Joint Committee on Recreational Water Facilities (Formerly: Joint Committee on Swimming Pool and Spa Equipment), an advisory committee member of the International Swimming Hall of Fame (ISHOF), and a member of the Uniform Swimming Pool, Spa & Hot Tub Technical Committee of the International Association of Plumbing and Mechanical Officials (IAPMO).

I have extensive employment experience in the field of water safety, swimming pool design, maintenance, management and operation; and aquatic risk management.

I have worked as a lifeguard, swim instructor, swim coach, crew coach, pool manager, pool service technician, marine institute aquatic specialist, park and recreation supervisor, and university professor, prior to starting my consulting firm. I was a certified lifeguard for 20 years, and an Ellis & Associates and American Red Cross lifeguard instructor and lifeguard instructor trainer. I've spent thousands of hours observing bathers as they entered and exited pools and spas. I have been employed as an aquatic specialist for the Florida Keys Marine Institute, as Supervisor of Sports and Aquatics at the Montgomery Village Foundation, Department of Recreation and Parks in Gaithersburg, Maryland, as Assistant Professor and Aquatic Coordinator at Temple University, Philadelphia, as Assistant Professor and Aquatic Specialist at San Diego State University, and since 1982 I have been the principal of Aquatic Consulting Services in San Diego. I regularly perform aquatic facility audits that include the evaluation of pools and spas, their design, maintenance and operation, and all related equipment.

Over the past twenty-five years, I have been retained as an expert in over 400 aquatic accident and aquatic facility construction defect cases. Approximately 140 of those cases involved drowning or near drowning incidents, several of which occurred in aboveground/onground pools. I have testified in court as an expert on 35 occasions, and have given 100 depositions. A current copy of my curriculum vitae is attached.

I was asked to review documents and discovery materials supplied by your office in reference to the drowning death of Jonathan Delgado. In addition, I have reviewed textbooks, articles, and industry standards on drowning, signage and warnings, effective barriers, and the proper design and safe use of aboveground/onground swimming pools. A complete list of documents reviewed is attached to the end of this report.

I was retained as an aquatics expert in this case to review statements made by various parties including family members, deposition transcripts, reports prepared by law enforcement officials, photos of the scene, pool assembly and operation instructions, and formulate opinions concerning the cause of Jonathan Delgado's

drowning and how it could have been prevented. Based on my review of documents, and my education, training and experience, I have formed the following opinions.

- The drowning incident occurred in the aboveground swimming pool located in the backyard of the Robert Yeager and Diane Yeager Maldonado residence at 476 Robbins Ave., Philadelphia, Pennsylvania; around 8:21 pm on Friday night, July 28, 2006.

- Jonathan Delgado was a 15 month old, non swimmer at the time of the incident. He was last seen by his mother, Marisol Maldonado, in the kitchen of his aunt and uncle's house drinking a bottle of milk.

- Jonathan was able to leave the house, enter the backyard and gain access to the pool, unnoticed by the two adults, his mother Marisol Maldonado, and a family friend Tanya Garcia, who were on the premises.

- Robert Yeager and Diane Yeager Maldonado, accompanied by their nephew Gabriel, left the house to go to the store and pick up pizza for dinner.

- Jonathan's mother, Marisol Maldonado, had been sitting in the living room reading a magazine, when her sister and brother-in-law, and son Gabriel left, then asked her friend Tanya to watch the children while she went upstairs to use the bathroom.

- Tanya Garcia was sitting in the kitchen and talking on the phone to her family in New Jersey. At one point, Tanya he got up, looked out the kitchen window, saw two of Marisol's boys, Danny and Hector, playing in the backyard, then sat down and continued her phone conversation.

- While in the upstairs bathroom, Marisol heard a splash, looked out the window but didn't see anything. She yelled downstairs to Tanya and asked her to check on Jonathan, but Tanya did not respond. Marisol felt that something was wrong, so she ran downstairs. When she entered the kitchen, Marisol didn't see Jonathan and asked Tanya where he was. Tanya didn't know where Jonathan was, and hadn't remembered seeing him since they arrived at the Yeager residence 20 to 25 minutes earlier.

- Marisol began searching for Jonathan and looked in the front and side yards, inside the house upstairs and downstairs, and in the backyard. Danny was playing in the

3

side yard in the dirt. Marisol saw Jonathan floating and partially submerged in the pool.

- Jonathan was in the pool, his head was turned sideways, and his body was trapped underwater and pinned under the inflated ring of the pool.
- Marisol removed Jonathan from the pool, and started screaming. Jonathan was cyanotic, was not breathing and did not have a pulse.
- Neighbor John Caldwell heard Marisol screaming, jumped over the fence into the Yeager's yard, grabbed Jonathan and started performing mouth-to-mouth resuscitation. Jonathan was carried next door and placed on the porch. John Caldwell started CPR.
- Another neighbor, who was a registered nurse heard the commotion and came over and relieved John in performing CPR.
- Police, firefighters and paramedics responded, took over life support measures, and transported Jonathan by ambulance to Einstein Hospital in critical condition.
- Jonathan was later transferred to St. Christopher's Hospital
- The actual drowning incident was witnessed only by Danny Delgado, Jonathan's 6 year old brother who has been diagnosed with autism.
- Jonathan Delgado's condition at the time he was removed from the pool was consistent with a post aspiration stage of drowning.
- The drowning was accidental.
- The precipitating event which led to the drowning was most likely entrapment between the inflated ring and the vinyl pool material. Due to Jonathan's young age and his inability to swim, he was not able to extricate himself from the situation. Certain causes can be ruled out (environmental conditions such as dangerous marine life, trauma, electrocution, diabetic coma and loss of consciousness, hypothermia, decompression sickness, air embolism, laryngospasm and suffocation/dry drowning, alcohol or drug intoxication, reaction to contaminated water, suicide, homicide or intentional/unintentional injury). And, there is no indication that cramps, shallow water blackout, head or spinal injury, sudden cardiac emergency, or seizure, were possibilities.

4

- It is uncertain how Jonathan was able to enter the pool. Given his age, height, and limited physical capabilities, the possibilities are somewhat limited. Jonathan was able to either climb up the sides of the pool, climb onto adjacent objects or structures and fell into the pool, or used the ladder to access the pool.

- The pool was manufactured in China by the Hong Kong company GP, Limited. General Foam Plastics Corporation of Norfolk, Virginia has an agreement with GP, Limited to provide instructions and safety warnings on the product, handle all warranty claims, supply spare and replacement parts, and provide customer service. General Foam Plastics Corporation's name, mailing address, website address, and phone number appear on the parts lists, customer information card, warranty statement, and owners' manual included inside the box with the pool and related equipment. The exterior of the box carries the Wal-Mart store brand "Sand & Sun" logo.

- The inexpensive GFP Quick-Set® pool, a ladder, cartridge filter, circulation pump, chemical feeder, hoses, clamps, strainers, gaskets and o-rings and miscellaneous parts are all packaged together in a single box that can be carried out of the store.

- Inflatable ring pools are sold at a very low cost in mass merchandising stores such as Wal-Mart, Toys R Us, Target and Kmart, and are marketed to first time pool owners and families with young children. The affordability of the product is attractive to seasonal pool users with limited budgets, who want a backyard swimming pool to use for family recreation.

- In the case of the Yeager pool, Diane Yeager Maldonado purchased the pool at Wal-Mart store #2141 in Philadelphia. Her mother-in-law, Margaret Yeager, worked at the store. Diane had seen the pool a couple of weeks earlier when she was shopping, and asked Margaret if they could get an employee discount. The pool was being sold at a clearance sale price of $200.00. Mrs. Yeager paid cash for the pool. The primary reason Mrs. Yeager purchased the pool was the low price.

- Robert Yeager, with some assistance from his sons, installed the pool in their backyard in 2005. He then disassembled and stored the pool during the off season, then reassembled it for summer 2006. Mr. Yeager accidentally flooded his neighbor's basement with several thousand gallons of water while emptying the pool

in 2005. An installation manual was provided, portions of which Mr. Yeager didn't read, except the instructions on how to assemble the ladder. He felt that setting up the pool was self-explanatory. An instruction video or DVD was not supplied by the manufacturer.

- Inflatable ring pools are designed to be set up by a homeowner, rather than a pool and spa professional. Instructions suggest that only a screwdriver and petroleum jelly for lubricating gaskets are needed in order to assemble the pool. Pool professionals usually take the time to educate consumers on the proper use and maintenance of their new pool, and on chemical and electrical safety. Pool professionals and their trade associations promote the safe use of the product, and warn homeowners about the dangers of allowing unsupervised use by young children, the dangers of diving, jumping or sliding into shallow water; the dangers associated with drinking alcohol or taking medications that make you drowsy while swimming, and dangers of extended underwater breath holding. Mass merchants are not likely to educate their customers on safety issues, since their sales personnel lack the training to provide that service.
- Statements such as "All electrical components shall be installed in accordance with Article 680 of the National Electrical Code 1999 (NEC) Swimming Pools, Fountains and Similar Installations, or its latest approved edition" are included in the instructions, but no information is provided on where to obtain a copy of NEC 680, or what code requirements apply to the safe installation and use of the product.
- Although mention is made in the owners' manual that consumer awareness booklets are available from the (former) National Spa and Pool Institute, and a list of NSPI Safety Instructions are provided, neither the manufacturer nor the retail store emphasize the importance of multiple layers of protection to prevent children from gaining access to the pool during lapses in adult supervision. Drowning is the second (or in some states, first) leading cause of death among young children in the United States. Thousands of children are treated for pool submersion injuries that occur in residential pools every year, and more than three hundred (300) of those children die as a result of drowning. The most likely victim of fatal drowning is a two

6

year-old boy, last seen inside the house, and thought to be safely engaged in some activity by the adults on the premises.

- The pools are not drained and refilled after each use, and water is retained for extended amounts of time, circulated, filtered and chemically treated. Since inflatable ring pools usually contain more than eighteen (18) inches of water, with thirty (30) to forty-two (42) inches of water depth being typical, state and local barrier codes apply. Information is not provided to the consumer when purchasing the product, nor is information provided in the accompanying packet of materials that isolation fencing, safety covers, alarms or other effective barriers may need to be installed prior to the assembly of the pool and its components, and filling the pool with water.

- Disassembly and storage instructions which are included in the owners' manual mention allowing water to drain out, but don't explain where several thousand gallons of water are supposed to go. They don't point out that allowing pool water or any non-storm water discharges to drain into the street and down the municipal storm sewers is a violation of the Clean Water Act [U.S. EPA 40 CFR 122.26 (d)(2)(iv)(B)(1)], or that de chlorinated pool water may not be an illicit discharge, but may require a permit.

- The ladder included with the pool package is unstable and poorly designed. It is not sturdy enough to hold larger adults. The handle brace pieces to which warnings are applied and are designed to provide some level of strength and stability broke off. This could have resulted in ladder failure. The A frame ladder designed without a platform requires the user to step on the inflated pool ring at top of the ladder which could collapse the ring, cause the pool wall to cave in, and cause a sudden loss of water from the pool. A small child may fall into the pool while trying to transition from one side of the ladder to the other. The ladder is too short for the height of the pool wall. A bather standing on the top rung has a high center of gravity which may cause him to fall while attempting to turn around to descend the ladder rungs into the pool, in order to follow instructions which say "For entry / exit of pool, face the ladder at all times". The ladder is also unstable because one set of legs are placed on an uneven, soft grass lawn and the other set of legs are sitting in the pool on the vinyl

surface. The ladder cannot be used to make the pool inaccessible, unless it is physically removed from the pool. The ladder could be made to have greater strength and stability by: installing it on level ground, attaching legs to a wide base, making the ladder handrails higher, including a non-slip platform to stand on, attaching the ladder to the pool or anchoring the ladder into ground on the outside of the pool, using a greater thickness of anodized aluminum tubing, or tubing made of stronger materials (stainless steel, PVC, ABS, powder coated galvanized steel...), and designing the ladder to support more weight and shifting weight.

- Warning labels on the pool are minimal, difficult to read, and not easily seen. No depth markers are installed, and there are no graphics or distinguishing markings on the pool bottom. Warning labels on the ladder broke off. Effective signage should be easily assimilated, understood, graphic, repetitive and meaningful. Meaningful warning signs should notify users of hazards and the risk of injury. Warning signs that are correctly sized, designed and worded can help to deter injuries and deaths. To be meaningful, a warning sign must: be designed to gain attention in advance of encountering the danger, convey the nature of the danger, warn with an intensity commensurate with the potential for injury, tell how to avoid the injury, and explain the consequences of failing to heed the warning.

In summary, the inflated ring pool was defectively designed and not safe for its intended use. Warnings were inadequate. Higher quality components should have been manufactured and sold. Sales, assembly and installation of the product should be done by pool professionals. Effective barriers and multiple layers of protection could have prevented this tragedy when a momentary failure of adult supervision occurred. Customers need to be educated in the safe use of the product and warned of the dangers of improper use, and this education was not provided by the manufacturer or retail sales personnel. Customers need to understand that the product is not a "toy", but rather a consumer product that when improperly designed or used, can result in catastrophic injury or death, especially to young children.

If called, I will testify to these expert opinions.  I declare under penalty of perjury that opinions expressed in this report are my own and were formed, based upon my education and experience, and upon my review of documents provided, and familiarity with the type of pool involved the incident.  My opinions and conclusions are based upon a reasonable degree of professional certainty.  This report was prepared by me in San Diego, California on June 30, 2010.


Alison Osinski, Ph.D.
Aquatic Consulting Services

Materials Reviewed:

- Photos of exemplar pool
- Photocopies of photos of the pool and surrounding area taken by the police on the evening of the accident
- Deposition transcript of: Diane Maldonado, Pool owner
- Deposition transcript of: Marisol Maldonado, Plaintiff and Jonathan's mother
- Deposition transcript of: Kevin Sanderlin, Wal-Mart Director of Global Procurement
- Deposition transcript of: Robert Yeager, volumes I and II, Pool owner
- Deposition transcript of: Gary Lawson, General Foam Engineering Manager
- Philadelphia Police Department Reports and Interview Records
- EMS Run Sheet
- Documents provided by General Foam, including: Owners' Manual, Ladder Assembly Instructions, Ring Pool Setup Instruction Sheet, Labels and Warnings, Box Exterior
- U.S. Consumer Product Safety Commission "Safety Barrier Guidelines for Home Pools"
- U.S. Patent # 5,924,144 "Inflatable Swimming Pool and Supporting Shell"
- List of inflatable top ring pools sold at Wal-Mart store #2141 in Philadelphia between 5/1/05 and 7/31/05.
- Articles and texts:
  - Bursting the Bubble (Pool & Spa Online, October 2006)
  - Swimming Pools – Safety Is No Accident (Consumer Affairs)
  - Feds Target Pool Safety (Consumer Affairs, August 3, 2004)
  - Backyard Pools Pose Danger to Kids (Consumer Affairs, June 5, 2006)
  - Low Cost Pools Pose Hazard to Children (ConsumerReports.org
  - ACS Pool Tip #1: Drowning Recognition (from www.alisonosinski.com)
  - ACS Pool Tip #16: Effective Pool Barriers (from www.alisonosinski.com)
  - ACS Pool Tip #3: Home Pool Safety (from www.alisonosinski.com)
  - Fletemeyer, J. and Freas, S. (1999). Drowning: New perspectives on intervention and prevention. Boca Raton, FL: CRC Press.
  - Modell, J. (1971). The pathophysiology and treatment of drowning and near-drowning. Springfield, IL: Charles C. Thomas.
  - Osinski, A. (1986). Drowning. National Aquatics Journal, 2 (4), 6-7, 10.
  - Somers, G. Chiasson, D., and Smith, C. (2005, December). Pediatric drowning: A 20-year review of autopsied cases: I. Demographic features. The American Journal of Forensic Medicine and Pathology, 26 (4), 316-319.
  - Somers, G. Chiasson, D., and Smith, C. (2006, March). Pediatric drowning: A 20-year review of autopsied cases: II. Pathologic features. The American Journal of Forensic Medicine and Pathology, 27 (1), 20-24.
- Association of Pool & Spa Professionals (Formerly NSPI) documents:
  - ANSI/NSPI – 4: American National Standard for Aboveground/Onground Residential Swimming Pools
  - ANSI/NSPI – 8: Model Barrier Code for Residential Swimming Pools, Spas and Hot Tubs
  - NSPI "The Sensible Way to Enjoy Your Aboveground/Onground Swimming Pool: An Essential Safety Guide, Mandatory Reading"

10